## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

CATHY C. RAY,

      Plaintiff,

v.

                                         CASE No. 8:18-cv-2777-T-TGW

ANDREW SAUL,
Commissioner of Social Security,[1]

      Defendant.

_____

## ORDER

        The plaintiff in this case seeks judicial review of the denial of

her claims for Social Security disability benefits and supplemental security

income payments.[2] Because the decision of the Commissioner of Social

Security is supported by substantial evidence and does not contain any

reversible error, the decision will be affirmed.

---

[1] Andrew M. Saul became the Commissioner of Social Security on June 17, 2019, and should be substituted as the defendant. See Fed. R. Civ. P. 25(d).

[2] The parties have consented in this case to the exercise of jurisdiction by a United States Magistrate Judge (Doc. 14).

I.

The plaintiff, who was fifty-nine years old at the time of the administrative hearing and who has a college education (Tr. 38), has worked as a paralegal, administrative clerk, retail store manager, legal secretary and file clerk (Tr. 66–67).   She filed claims for Social Security disability benefits and supplemental security income payments, alleging that she became disabled due to "Back: Osteoarthritis, Migraines, Vertigo, [and] Meniere's Disease" (Tr. 251).   The claims were denied initially and upon reconsideration.

The plaintiff, at her request, then received a de novo hearing before an administrative law judge.   The law judge found that the plaintiff had severe impairments of "degenerative joint disease of the lumbar spine, disc bulging of the lumbar spine, facet arthropathy of the lumbar spine, disc bulging of the cervical spine, radiculopathy of the lumbar spine, cervicalgia, right knee degenerative joint disease, hereditary and idiopathic neuropathy, unspecified, Meniere's disease, and vertigo" (Tr. 17). The law judge concluded that due to those impairments the plaintiff was limited to a range of light work (Tr. 19):

> Specifically, the claimant can lift and/or carry 20 pounds occasionally, lift and/or carry 10 pounds frequently. She can stand and/or walk six hours in an eight-hour workday; sit six hours in an eight-hour workday. The claimant may never climb ladders, ropes, or scaffolds but may occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl. The claimant must avoid concentrated exposure to hazards.

Id. The law judge determined that, despite these functional limitations, the plaintiff could perform past relevant work as a paralegal, administrative clerk, manager retail stores, and file clerk (Tr. 23). Accordingly, the law judge decided that the plaintiff was not disabled. The Appeals Council let the decision of the law judge stand as the final decision of the Commissioner.

## II.

A.   In order to be entitled to Social Security disability benefits and supplemental security income, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than twelve months."   42 U.S.C. 423(d)(1)(A), 1382c(a)(3)(A).   A "physical or mental impairment," under the terms of the Social Security Act, is one "that results from

anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."   42 U.S.C. 423(d)(3), 1382c(a)(3)(D). The Act provides further that a claimant is not disabled if she is capable of performing her previous work.   42 U.S.C. 423(d)(2)(A), 1382c(a)(3)(B).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence.   42 U.S.C. 405(g).   Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971), quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938).   Under the substantial evidence test, "findings of fact made by administrative agencies ... may be reversed ... only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings."   Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc), cert. denied, 544 U.S. 1035 (2005).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the

witnesses.   Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971).   Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence.   Celebrezze v. O'Brient, 323 F.2d 989, 990 (5th Cir. 1963).

Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to reweigh the evidence, but is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled.   However, the court, in its review, must satisfy itself that the proper legal standards were applied and legal requirements were met.   Lamb v. Bowen, 847 F.2d 698, 701 (11th Cir. 1988).

B.   The Commissioner's regulations set out what is termed a "sequential" analysis for deciding disability claims.   See 20 C.F.R. 404.1520, 416.920.   The initial question is whether the plaintiff is engaged in substantial gainful activity because, if so, the plaintiff will be found not disabled.   20 C.F.R. 404.1520(b), 416.920(b).   If not, the next inquiry (step two) is whether a claimant has a severe impairment.   20 C.F.R. 404.1520(c),

416.920(c).   An impairment is not severe if it does not significantly limit a

claimant's physical or mental abilities to do basic work activities.   20 C.F.R.

404.1522(a), 416.922(a).    If there is not a severe impairment, then a

claimant is deemed to be not disabled.   20 C.F.R. 404.1520(c), 416.920(c).

When an impairment is severe, the next inquiry is whether the

impairment meets, or equals, a listing in Appendix 1 (step three), which sets

out criteria for the most serious impairments.   20 C.F.R. 404.1520(d).   If it

does, the claimant will be found disabled, without regard to the claimant's

age, education and work experience. Id.   If it does not, the claimant's

residual functional capacity is assessed.   20 C.F.R. 404.1520(e).   Based

upon that assessment, a further inquiry (step four) is made as to whether the

impairment prevents the claimant from doing past relevant work.   20 C.F.R.

404.1520(f).   If a claimant cannot do such work, an additional determination

(step five) is made concerning whether the claimant can perform other work

which exists in significant numbers in the national economy.   20 C.F.R.

404.1520(g).

In such cases, the regulations direct that an individual's residual

functional capacity, age, education, and work experience be considered in

determining whether the claimant is disabled.   These factors are codified in tables of rules, known as "guidelines" or "grids," that are appended to the regulations.   20 C.F.R. Part 404, Subpart P, Appendix 2.

III.

The plaintiff, who has worked as a paralegal, is proceeding <u>pro se</u> in this court.   Significantly, the plaintiff was represented by counsel at the administrative hearing, as well as before the Appeals Council.

The plaintiff in challenging the administrative decision enumerates twenty-one issues (Doc. 20, pp. 12–18).   Those contentions, which tend to be repetitious, are unavailing.   Moreover, to the extent the plaintiff has scattered other arguments in the remainder of her memorandum, those arguments are forfeited under the Scheduling Order and Memorandum Requirements, which directs that the plaintiff "identify with particularity the discrete grounds upon which the administrative decision is being challenged" (Doc. 16, p. 2). While the twenty-one grounds the plaintiff has enumerated do not all satisfy that requirement, they will be considered, at least to the extent a cogent contention can be discerned.

In light of the scatter-gun approach taken by the plaintiff, a statement of established legal principles will facilitate the disposition of the large number of contentions. Most fundamentally, administrative fact findings, such as those made by the law judge, are reviewed "under the highly deferential substantial evidence test." Adefemi v. Ashcroft, supra, 386 F.3d at 1026–27. Under that test, the law judge's findings are to be sustained even if the evidence preponderates against them. Crawford v. Commissioner of Social Security, 363 F.3d 1155, 1158–59 (11th Cir. 2004). In other words, it is not sufficient for the plaintiff to point to some evidence that supports her position: rather she must cite evidence that compels the finding she is advocating. Adefemi v. Ashcroft, supra.

Furthermore, while the law judge has a basic duty to develop a full and fair record, the burden of proving disability rests primarily with the plaintiff. See Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001); 20 C.F.R. 404.1512(a); 416.912(a). To the extent the plaintiff complains that the law judge failed to develop the record, the complaint is baseless. At the hearing, plaintiff's counsel was asked if there was any additional information to be submitted and she said "no" (Tr. 34). She added that the plaintiff was

scheduled for an arthroscopy the following week due to a loose body in her knee. That procedure was performed, and the records of that procedure were sent, somewhat belatedly, to the Appeals Council (Tr. 2, 74–75). As the Appeals Council concluded, there was no reasonable probability that the additional information would change the outcome of the decision. Under those circumstances, there is no basis for a complaint that the law judge failed to develop the record.

Notably, the evidence in the record goes back a number of years. However, the only evidence that is pertinent is the evidence that is relevant to the plaintiff's condition between the alleged onset date of July 8, 2016, and the date of decision of March 13, 2018. The plaintiff suggests that it was the law judge who established the disability onset date of July 8, 2016. That suggestion is incorrect. After the hearing, the plaintiff's counsel, on a form signed by the plaintiff, submitted a request to amend the onset date because the plaintiff had been employed for the first months of 2016 (Tr. 249). Consequently, a great deal of the evidence cited by the plaintiff has little or no weight because it does not bear significantly on the plaintiff's condition on, or after, July 8, 2016.

-9-

The relevant evidence can be focused further through the well-established principle that "a diagnosis or a mere showing of 'a deviation from purely medical standards of bodily perfection or normality' is insufficient; instead, the [plaintiff] must show the effect of the impairment on her ability to work." Wind v. Barnhart, 133 Fed. Appx. 684, 690 (11th Cir. 2005) (quoting McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986). Similarly, the physician needs to translate how abnormal clinical findings affect functioning. Longworth v. Commissioner of Social Security Administration, 402 F.3d 591, 596 (6th Cir. 2005). In other words, it is the functional limitations that determine disability. Moore v. Barnhart, 405 F.3d 1208, 1214 n.6 (11th Cir. 2005); cf. Osborn v. Barnhart, 194 Fed. Appx. 654, 668 (11th Cir. 2006) (discounting physician's "medical records [that] reveal only diagnoses, not reasoned and medically-supported opinions detailing [the plaintiff's] work limitations or limited functions"). Similarly, symptoms are not significant unless they indicate functional limitations. 20 C.F.R. 404.1529(a), 416.929(a) ("statements about … pain or other symptoms will not alone establish that [a claimant is] disabled"). In other

words, a mere reference to diagnoses or symptoms will not establish functional limitations that are the key to a finding of disability.

Having placed the appropriate focus upon the relevant evidence, I will proceed to evaluate the plaintiff's twenty-one issues. However, I will only discuss those issues that have some force and the evidence that has significance.

The plaintiff first asserts that the law judge erred in failing to list all of the plaintiff's "primary" impairments (Doc. 20, p. 12). Neither the Social Security regulations, nor the cases, recognize a category of "primary" impairments. In this case, the law judge appropriately determined which impairments he considered "severe" and which he considered "non-severe." Significantly, the law judge is not required to "specifically refer to every piece of evidence in his decision." Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005). Consequently, contrary to the plaintiff's position, the law judge does not need to list all of the plaintiff's diagnoses, especially since, as explained, they do not necessarily reflect functional limitations.

The plaintiff's second contention complains that the law judge failed to list all of the plaintiff's medically determinable impairments, including vitamin D deficiency (Doc. 20, p. 12).   This contention fails for the same ground as the previous one.   The claim about vitamin D deficiency, however, highlights the frivolousness of much of what the plaintiff is asserting.   The Commissioner points out that the plaintiff did not have a vitamin D deficiency (Doc. 21, pp. 5–6).   Moreover, the plaintiff reported that she was taking a vitamin D supplement "to strengthen bones" (Tr. 322).   In all events, the Commissioner responds that the plaintiff has not shown that a vitamin D deficiency causes functional limitations beyond what the law judge had already found.

The plaintiff's third contention seeks to invoke the listing of impairments which can come into play at the third step of the sequential analysis.   This contention is also frivolous.   The law judge appropriately considered the pertinent listing of impairments and concluded none was satisfied (Tr. 18).   Moreover, he correctly stated that "[n]o treating or examining medical source reported [a] finding of listing level severity, nor

did the State agency medical consultants determine that the claimant's impairments met the criteria of any listing" (id.).

The plaintiff's fourth contention is that the law judge failed to consider the combination of the plaintiff's impairments (Doc. 20, p. 12). This is another frivolous contention.   The law judge expressly recognized the need to consider the combined effect of the plaintiff's impairments (Tr. 16–17).   Moreover, at step three he specifically considered the combined effects (Tr. 18).   See Wilson v. Barnhart, 284 F.3d 1219, 1224–25 (11th Cir. 2002).

The fifth ground is that the law judge failed to consider evidence regarding an August 2013 MRI (Doc. 20, pp. 12–13).   This argument is baseless, if not frivolous.   This evidence is from almost three years before the plaintiff's alleged onset date.   Moreover, the plaintiff worked for a number of months at the beginning of 2016.

The plaintiff challenges, sixth, the law judge's credibility determination (Doc. 20, p. 13).   This challenge is unavailing.

The regulations set out how symptoms, including pain, are to be evaluated.   20 C.F.R. 404.1529, 416.929.   As the law judge explained,

they set out a two-step process (Tr. 19).   The law judge properly followed

that process and made the following findings (Tr. 23):

> After careful consideration of the evidence, I find
> that the claimant's medically determinable
> impairments could reasonably be expected to
> cause the alleged symptoms; however, the
> claimant's statements concerning the intensity,
> persistence and limiting effects of these symptoms
> are not entirely consistent with the medical
> evidence and other evidence in the record for the
> reasons explained in this decision.

The law judge explained those findings in detail (Tr. 22):

> Overall, the claimant has physical impairments
> that create limitations on her ability to function.
> However, the objective medical evidence does
> not support the severe functional limitations she
> alleges. At the hearing, the claimant testified to
> experiencing unpredictable attacks associated
> with Meniere's disease, mild to severe and
> lasting anywhere from 12 hours to two weeks
> (Testimony). Despite a long history of the
> disease and vertigo, the record shows that since
> the amended alleged onset date, the claimant
> was only being "monitored" for the disease
> (11F). An examination of the ear was generally
> within normal limits (12F). Overall, the record
> shows no evidence the claimant required
> treatment of any kind for severe attacks or
> episodes of Meniere's disease. The record also
> shows the claimant has degenerative joint
> disease of the lumbar spine, disc bulging of the

lumbar spine, facet arthropathy of the lumbar spine, disc bulging of the cervical spine, radiculopathy of the lumbar spine, cervicalgia, right knee degenerative joint disease, hereditary and idiopathic neuropathy, unspecified. Nonetheless, physical examinations showed there was no instability or fractures of lumbar spine (12F). The claimant walked with difficulty slouching but her gait was normal. The evidence is void of any reports that the claimant required an assistive device for ambulation. A neurological exam revealed the lumbar spine was within normal limits (11F). The claimant's right knee was stable, there was no obvious effusion, extensor mechanism was intact, motor/sensory exam was normal, and strength was 5/5 (13F).

Moreover, between 2016 and 2017, the claimant's treatment was primarily conservative in nature. The claimant maintained her pain through pain management, underwent a series of epidural injections, and subsequently underwent medial branch nerve block to the cervical and lumbar spines (11F, 12F, 17F, 18F). At the hearing, the claimant alleged worsening of Meniere's disease. However, prior to the amended alleged onset date of July 8, 2016, the record shows the claimant worked at SGA from January 2016 through July of 2016 (6D). Notably, the claimant testified that she has continued to look for full time and part-time paralegal work after July 2016 but has found nothing (Testimony). This clearly indicates the claimant feels she can do more than alleged.

> Despite her alleged physical limits, the claimant testified that she walks outside for about five minutes, is able to make tea, dusts her furniture, and can do some laundry and clean some dishes. The claimant also testified that she sits in her lounge chair and watches television the majority of the day, which is contrary to her prior statement that she could only sit for about 15 minutes (Testimony). Considering the record as a whole, as well as the claimant's testimony, I find the claimant's testimony partly unpersuasive and her allegations are only partially consistent with the evidence.

Notably, the law judge did not totally reject the plaintiff's subjective complaints.   Thus, he found that she was limited to light work with additional limitations.   He simply found that she was not totally disabled.   His extended credibility determination clearly justified that conclusion.

The plaintiff's challenge to the law judge's credibility finding is merely that there is some medical evidence that supports her testimony. As previously explained, the law judge's findings are entitled to deference. In order to overcome that finding, the plaintiff must point to evidence that compels the opposite conclusion.   <u>Adefemi</u> v. <u>Ashcroft</u>, <u>supra</u>.   The plaintiff certainly has not made such a showing.

The plaintiff's seventh issue essentially challenges the law judge's treatment of Meniere's disease.   This contention also fails.

Significantly, the law judge found that the plaintiff's Meniere's disease was a severe impairment.   Moreover, he thoroughly discussed that condition in his decision.   Thus, the law judge stated (Tr. 20) (emphasis in original):

> Regarding the claimant's alleged physical conditions, the record shows she has a long history of Meniere's disease, neck pain, and lower back pain. As of the amended alleged onset date of July 8, 2016, the evidence reveals relatively infrequent trips to the doctor for the allegedly disabling symptoms associated with Meniere's disease. Records dated September 2016 showed the claimant was "continuing to be monitored" for Meniere's disease. At that time, on a physical exam, the claimant denied any ear pain, head trauma, or headaches. **There was no discharge from the external ear canal.** Tympanic membranes (TM's) were intact and there was no hearing loss (12F). A magnetic resonance imaging (MRI) of the brain revealed a small non-expansile area or lesion within the occipital bone near the midline 0.9 x 0.6 x 0.4 centimeters and low signal on TI and increased signal on T2 gradient-echo imaging. There was some form of cystic lesion. The interpreting physician, Thomas Okulski, M.D., noted that the findings had a benign appearance (6F). In August of 2017, the claimant

presented for an evaluation of Meniere's disease in the left ear. She reported having a history of the disease for a period of about nine years. The claimant complained of left ear pressure, dizziness, intermittent tinnitus, and the inability to "pop" her left ear. On examination, the ears canals were clear. Tympanic membranes were intact with no obvious effusion or infection. There was tympanosclerosis on the left. There was mild mucosal congestion in the nasal passage and septum without significant deviation. The claimant was advised to avoid caffeine, salt, sugar, and chocolate. She was prescribed medication for headaches and sinus pressure (7F). The remainder of the record shows no further treatment for Meniere's disease (8F-l 8F). Overall, the claimant has not generally received the type of medical treatment one would expect for a totally disabled individual.

As previously indicated, the law judge also discussed the plaintiff's Meniere's disease in connection with his credibility determination. To iterate, he said (Tr. 22):

At the hearing, the claimant testified to experiencing unpredictable attacks associated with Meniere's disease, mild to severe and lasting anywhere from 12 hours to two weeks (Testimony). Despite a long history of the disease and vertigo, the record shows that since the amended alleged onset date, the claimant was only being "monitored" for the disease (11F). An examination of the ear was generally within

normal limits (12F). Overall, the record shows no evidence the claimant required treatment of any kind for severe attacks or episodes of Meniere's disease.

The plaintiff suggests that the law judge mentioned the plaintiff's "so called lack of treatment of Meniere's disease since September 2016" (Doc. 20, p. 13). The law judge did not make such a statement. This misstatement of the law judge's decision underscores the lack of merit in the challenge to the law judge's evaluation of the plaintiff's Meniere's disease.

Another feeble argument on this issue is the plaintiff's claim to a hearing loss as reflected in a report of an examination by Dr. Bhupendra K. Gupta. That report simply stated, as the plaintiff acknowledges, that "[h]earing on whisper test seems normal on right side," while "[h]earing on whisper test seems abnormal on left side" (Tr. 404). The plaintiff does not point to any evidence in the record indicating that this result in a whisper test constitutes a significant functional limitation.[3]

---

[3]It is remarkable that the plaintiff would refer to Dr. Gupta's report since it essentially torpedoes her claim of disability (see Tr. 403–410).

In sum, the law judge thoroughly considered the plaintiff's Meniere's disease and concluded that the condition was not disabling. That explanation was more than adequate and supported by substantial evidence.

In the plaintiff's eighth issue — besides rehashing prior complaints — the plaintiff asserts that the law judge failed to consider the medical records of the plaintiff's primary care physician, Dr. Hana Clements. While the law judge did not refer to Dr. Clements by name, he cited to her records. Thus, Dr. Clements' records were designated as exhibit 12F (see Tr. 484–533). The law judge referred to exhibit 12F a number of times in his decision (Tr. 20, 21, 22, 23). Consequently, the plaintiff's assertion that the law judge failed to consider Dr. Clements' medical records is baseless.

Moreover, my review of the record included a review of Dr. Clements' records. There is nothing in her records that provides significant support for the plaintiff's claim of disability.

The plaintiff's ninth issue again complains that the law judge did not incorporate all of the plaintiff's medically determinable impairments. As previously explained, a mere listing of diagnoses is not significant absent

a showing that they reflect a functional limitation.   Accordingly, the law

judge is not required to refer to every piece of evidence.

In the plaintiff's tenth issue she focuses on her obesity.   The

law judge evaluated that condition as follows (Tr. 18) (footnote omitted):

> In September of 2016, the claimant measured 64
> inches tall and weighed 203 pounds, which
> correlates with a BMI of 34.84 (12F, 13F, 14F).
> Since the evidence indicates the claimant was
> obese, I have carefully considered Social Security
> Ruling 02-1p, which discusses obesity and its
> potential for causing or contributing to other
> impairments, such as musculoskeletal, respiratory,
> and cardiovascular impairments. However,
> musculoskeletal examinations revealed no
> significant abnormalities. The claimant had some
> decreased range of motion to the upper right
> extremity but overall motor strength was 5/5,
> sensation, and reflexes were grossly intact and
> there were no neurological deficits.
> Cardiovascular examinations showed no murmurs,
> gallops, or rubs, and the claimant's lungs were
> clear bilaterally to auscultation and percussion.
> Overall, the evidence indicates no more than
> minimal findings related to the claimant's obesity.
> Therefore, the limitations described in the residual
> functional capacity above include consideration of
> the claimant's obesity. Accordingly, I find obesity
> is not severe.

Thus, the law judge appropriately and reasonably considered the plaintiff's obesity. The plaintiff has not pointed to anything in the record that compels a different conclusion. Consequently, this argument regarding obesity is unavailing.

The plaintiff's twelfth issue is that the law judge failed to develop medical evidence from Dr. David Vargas, which was exhibit 10F. The law judge cites that exhibit in determining that the plaintiff's GERD was a non-severe impairment (Tr. 18). The plaintiff has not identified any evidence showing otherwise. What is remarkable about Dr. Vargas's report is that it strongly undercuts the plaintiff's claim of musculoskeletal impairments (see Tr. 433).

The plaintiff's thirteenth issue is similarly baseless. The plaintiff asserts that the law judge failed to consider the x-ray report by Dr. Donald Sachs. Again, while the law judge did not mention Dr. Sachs by name, he specifically referred to exhibit 17F (Tr. 21), which consists of Dr. Sachs's report (Tr. 555–559). Notably, Dr. Sachs commented that the plaintiff had "fairly benign MRIs" (Tr. 555).

The plaintiff's fourteenth and fifteenth issues relate to the MRIs of the cervical and lumbar spine.   The complaint is that, although the law judge mentioned those MRIs, which were ordered by Dr. Saquib Khan, he "failed to consider the severity of the pain and symptoms regarding the impairments" (Doc. 20, p. 16).   Thus, these are not challenges to the law judge's assessment of Dr. Khan's reports, but rather a challenge to the law judge's evaluation of the plaintiff's pain and other symptoms reflected in the reports.   Consequently, those claims concern the credibility of the plaintiff's subjective complaints either as reflected in her testimony and submissions, or in her statements to treating doctors.   The law judge's credibility finding regarding the plaintiff's subjective complaints have previously been addressed in some detail (supra, pp. 13–16) and no further discussion is warranted.

The plaintiff's sixteenth issue quibbles with the law judge's statement that "a neurological exam revealed the lumbar spine was within normal limits" (Doc. 20, p. 17).   The plaintiff incorrectly asserts that the law judge relied on a state agency report in making that assertion (id.).   In fact, the law judge for that statement cited to exhibit 11F, which is a report

from Dr. Kahn (Tr. 22).   Dr. Kahn's reports said "L-S spines: within normal limits" (Tr. 447, 450).   Thus, the law judge's statement was not in error. Moreover, that comment was simply part of the law judge's thorough explanation of the evidence, and there is no indication that he gave it any significant weight.

In the plaintiff's seventeenth issue, she complains that the law judge failed to develop complete medical records from Dr. Sachs and the Day Surgery Center regarding a facet injection procedure.   This contention fails.   In the first place, the plaintiff was represented by counsel at the time and if there was failure to submit records, it was the fault of plaintiff's attorney and not the law judge.   Further, the plaintiff has failed to identify any record that is lacking.

The plaintiff's eighteenth contention is that the law judge erred in stating that the plaintiff's "physical impairments showed few significant findings" (Doc. 20, p. 17).   What the law judge stated was that "physical exams generally showed few significant findings" (Tr. 22).   However, the law judge said further that "the claimant has physical impairments that create limitations on her ability to function" (id.).   Correspondingly, the law judge

found that the plaintiff had a number of severe impairments (Tr. 17).   As a result, the law judge concluded that the plaintiff was restricted to light work with additional functional limitations (Tr. 19).

The plaintiff's nineteenth issue objects to the law judge giving great weight to the opinion of a non-examining reviewing physician, Dr. Audrey Goodpasture.   With respect to Dr. Goodpasture's opinion, the law judge stated (Tr. 22–23):

> I give great weight to the assessment of the State agency medical consultant, Audrey Goodpasture, M.D., on December 8, 2015, who opined that the claimant could do light work with no more than occasional climbing of ramps and stairs, no climbing of ladders, ropes, or scaffolds, no more than occasional balancing, stooping, kneeling, crouching, and crawling, and avoid concentrated exposure to hazards (8A). Dr. Goodpasture's opinion is supported by the evidence as described above. Specifically, the evidence shows the claimant has the above mentioned physical impairments (6F, 7F, 8F, 11F, 12F, 13F, 17F, 18F).   Again, physical exams generally showed few significant findings.   There was no instability or fractures of lumbar spine (12F). Gait was normal and she did not require an assistive device for ambulation.   A neurological exam revealed the lumbar spine was within normal limits (11F).   The claimant's right knee was stable, there was no obvious effusion, extensor

mechanism was intact, motor/sensory exam was normal, and strength was 5/5 (13F). Additionally, the claimant testified to the ability to perform activities of daily living without significant help from others, which further supports the consultant's opinion that the claimant can do light work.

The plaintiff complains that there is no support for Dr. Goodpasture's opinion. That is not correct. Dr. Goodpasture in forming her opinion specifically relied upon the consultative examination by Dr. Gupta that had just taken place (Tr. 116). The report of that mostly unremarkable exam clearly supports Dr. Goodpasture's opinion that the plaintiff can perform a range of light work.

The plaintiff argues further that Dr. Goodpasture's opinion is flawed because it was rendered before the plaintiff's amended alleged onset date. This argument would have force if, in considering the opinion, the law judge did not consider the subsequently adduced evidence.

However, the law judge, in assessing Dr. Goodpasture's opinion, evaluated it in light of all the evidence in the record. Thus, he stated (Tr. 22): "Dr. Goodpasture's opinion is supported by the evidence as described above. Specifically, the evidence shows the claimant has the above

mentioned physical impairments (6F, 7F, 8F, 11F, 12F, 13F, 17F, 18F)." Those exhibits cover the pertinent medical records through the end of the transcript.

Notably, the law judge was required to assess Dr. Goodpasture's opinion and explain the weight he gave to it. Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir. 1987). Significantly, he did that near the end of the evaluation of the evidence. And when he got to that point, he had already explained his view of the evidence.

Consequently, the law judge's decision was not driven by an arguably flawed opinion by Dr. Goodpasture. Rather, the law judge's decision ended up coinciding with Dr. Goodpasture's earlier opinion.

In issue twenty, the plaintiff asserts that the law judge erred in accepting the testimony of the vocational expert. The plaintiff seems to think that the law judge erroneously relied upon the expert's answer to hypothetical question three (Doc. 20, p. 18). As the Commissioner correctly responds, the law judge relied upon the first hypothetical question, which corresponded with the law judge's finding of the plaintiff's residual functional capacity (Tr. 67–68). Hypothetical three, on the other hand,

included a limitation that the individual would miss three days of work per month, which elicited a response that there would be no work for the individual (Tr. 69). The law judge did not accept a limitation of missing three days of work per month, so that hypothetical three is irrelevant.

It is noted that the plaintiff throws into this issue the assertion that the law judge did not include all of the plaintiff's impairments in the hypothetical question. This contention is forfeited because, in violation of the Scheduling Order and Memorandum Requirements, it was not particularized as a discrete challenge (Doc. 16, p. 2). In any event, it is meritless since hypothetical questions do not include impairments, but only functional limitations accepted by the law judge.

Finally, the plaintiff ends at issue twenty-one with another frivolous contention. The plaintiff asserts that the law judge erred by not properly analyzing the Grids. Of course, the law judge did not apply the Grids (also known as the Medical Vocational Guidelines). The Grids do not come into play until the fifth (and final) step of the sequential analysis. In this case, the law judge properly stopped at step four when he found that the plaintiff could return to past relevant work.

It is, therefore, upon consideration,

ORDERED:

That the decision of the Commissioner is hereby **AFFIRMED**.
The Clerk shall enter judgment in accordance with this Order and **CLOSE**
this case.

DONE and ORDERED at Tampa, Florida, this ___7th___ day
of May, 2020.

THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE

-29-